**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

JOSE ALBERTO VILLALOBOS-BRACHO,

      Petitioner,

      v.                             Case No. 2:26-cv-02248-BCL-atc

CHRISTOPHER BULLOCK,
Field Office Director of U.S. Immigration
and Customs Enforcement, New Orleans
Field Office,

      Respondent.

---

**ORDER DENYING § 2241 PETITION**

---

Petitioner Jose Alberto Villalobos-Bracho has filed a Petition for Habeas Corpus under 28 U.S.C. § 2241, by which he challenges his detention without a bond hearing. (Doc. 1, at 1)

As a preliminary housekeeping matter, the United States Court of Appeals for the Sixth Circuit has held that the "district director"—now the Field Office Director—for the place of confinement is the proper respondent to a Section 2241 petition filed by an alien challenging his confinement. *See Roman v. Ashcroft*, 340 F.3d 314, 320–21 (6th Cir. 2003). Here, that is now Christopher Bullock, Field Office Director for the New Orleans Field Office, United States Immigration and Customs Enforcement. The Clerk is therefore **DIRECTED** to modify the docket to replace Scott Ladwig with Christopher Bullock. *See* Fed. R. Civ. P. 25(d).

As to the merits of the Petition for habeas corpus, the Petition (Doc. 1) is **DENIED** for the reasons that follow.

1

## BACKGROUND

Petitioner is a noncitizen currently detained by U.S. Immigration and Customs Enforcement. (Doc. 1-3, at 2) Petitioner was detained on or about January 15, 2026 "without having been admitted into the United States." (*Id.*) By this petition under 28 U.S.C. § 2241, Petitioner challenges his detention without a bond hearing and seeks release from custody "on reasonable bond or parole." (Doc. 1 at 7; Doc. 1-3 at 7)

## LEGAL STANDARD

Section 2241 authorizes a court to issue a writ of habeas corpus when an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). An alien seeking to challenge his detention relating to removal proceedings may in some circumstances seek relief through a Section 2241 petition. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Section 2243 directs the judge entertaining an application for a writ of habeas corpus to "forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. The last clause of Section 2243 imposes "a duty to screen out a habeas corpus petition which should be dismissed for lack of merit on its face," as where "the necessary facts can be determined from the petition itself without need for consideration of a return." *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970).

## ANALYSIS

Petitioner's failure to exhaust his administrative remedies forecloses review of his statutory claims. And, in any event, all of Petitioner's claims fail on the merits because Petitioner's detention without a bond hearing violates neither the Immigration and Nationality Act nor the Constitution.

**I.     Statutory Claims**

2

**A. The Exhaustion Doctrine precludes review of Petitioner's statutory claims.**

The Supreme Court "long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). That requirement makes obvious sense when Congress requires exhaustion. It arguably makes less sense when, as in Section 2241, Congress has not done so. Perhaps the so-called prudential exhaustion doctrine—a matter of "sound judicial discretion," *id.*—can be explained as an aspect of ripeness, the idea being that there is no ripe dispute if the Executive Branch has not had its final say. Or perhaps it is a shirking of the federal courts' "virtually unflagging" duty to exercise jurisdiction in cases properly before them. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)).

In any event, both the Supreme Court and the Sixth Circuit have embraced the doctrine, which is thus binding on this Court. *See, e.g.*, *McCarthy*, 503 U.S. at 144; *see also Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013). Exhaustion gives an agency "the opportunity to correct its own mistakes with respect to the programs it administers"; "discourages disregard of the agency's procedures"; promotes efficiency because "[c]laims generally can be resolved much more quickly and economically before an agency"; and "may produce a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotation marks and citations omitted).

Petitioner acknowledges that he did not exhaust his administrative remedies by presenting his claims to an Immigration Judge and then the Board of Immigration Appeals. (Doc. 1, at 2) Petitioner does invoke the futility exception (*id.*) under which the exhaustion requirement can be excused if exhaustion would be futile. But, as the Sixth Circuit has recently explained, in determining whether exhaustion would be futile, "the crucial inquiry [is] whether the agency can

3

provide the relief requested if the argument succeeds, not whether it is likely to succeed." *Smith v. United States Securities & Exchange Commission*, --- F.4th --, 2026 WL 850806, at *7 (6th Cir. 2026).[1] And, here, the Immigration Judge or Board of Immigration Appeals could certainly grant petitioner a bond hearing or release on bond if he were to prevail on his claims; indeed, the whole theory of his claims is that the law compels the IJ to give him such a hearing (and not, say, that the federal courts should be stepping in to run bond proceedings on a categorical basis). Petitioner's statutory claims are thus barred by the exhaustion doctrine.[2]

In sum, Petitioner's statutory claims are barred by the exhaustion doctrine, and are due to be rejected for that reason alone.

### B. Under the governing statutes, Petitioner is an "applicant seeking admission" subject to mandatory detention.

Even if they were not barred by the exhaustion doctrine, Petitioner's statutory arguments fail on the merits. Petitioner's statutory eligibility for a bond hearing is determined by whether his detention is governed by 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1226(a). Section 1225(b)(2) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). In contrast, Section 1226(a) provides, in relevant part:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.

---

[1] *Smith* addressed the futility exception in the context of an express exhaustion requirement that excepted situations in which "there was reasonable ground for … failure to" exhaust. *Id.* at *5 (quoting 15 U.S.C. § 78y(c)(1)). That makes no difference: There is no logical reason for treating the concept of futility differently in the context of a prudential rule than in the context of a statute with a generally worded exception that encompasses the concept of futility.

[2] The undersigned has in several similar cases concluded that the exhaustion doctrine did not bar petitioners' claims. The Court now reaches a different conclusion based on the Sixth Circuit's recent clarification of the law in *Smith*.

> Except as provided in subsection (c) and pending such decision, the Attorney General--
>
> **(1)** may continue to detain the arrested alien; and
>
> **(2)** may release the alien on--
>
>> **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>
>> **(B)** conditional parole . . . .

8 U.S.C. § 1226(a)(1)–(2). Petitioner argues that his detention without an individualized bond hearing under 8 U.S.C. § 1225(b) violates his rights. (Doc. 1, at 6)

The Court disagrees. "Congress defined 'applicant for admission' broadly in Section 1225(a)(1) to include all 'alien[s] present in the United States who have not been admitted.'" *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 504 (5th Cir. 2026); *see* 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.").[3] That definition encompasses Petitioner because he never claims that he was legally admitted into the United States. *See* Doc. 1; *Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *4 (8th Cir. Mar. 25, 2026). The passage of time makes no difference. Unless and until Petitioner is granted authorization and lawfully admitted into the United States, he remains an "applicant for admission." As such, Petitioner's detention during

---

[3] Statutory language underscores the point in providing that "'admission'. . . mean[s], with respect to an alien, the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13) (emphasis added). Until his entry into the United States is lawful, Petitioner remains an "applicant for admission," and thus his detention during removal proceedings is mandatory under Section 1225(b)(2). *See Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *2 (8th Cir. Mar. 25, 2026).

removal proceedings is mandatory under Section 1225(b)(2) because Petitioner is an "applicant for admission."

Petitioner cannot avoid this result by claiming that Section 1225(b)(2) applies only to "arriving aliens." (Doc. 1 at 7; Doc. 1-3 at 3) Section 1225(b)(2) does not include such a limitation. Congress surely would have included that limitation if it had intended Section 1225(b)(2) to apply only to aliens arriving at the border, a point highlighted by Congress' use of "arriving aliens" elsewhere in Section 1225. *See Buenrostro-Mendez*, 166 F.4th at 504.

Because Petitioner falls within the scope of Section 1225(b)'s statutory language, his detention is mandatory. Petitioner's challenge to that detention therefore fails.

**II. Subjecting Petitioner to mandatory detention as required by a faithful interpretation of Section 1225 does not violate the Constitution.**

**A.** While he does not elaborate, Petitioner claims that his mandatory detention violates the Fifth Amendment's Due Process Clause. (Doc. 1, at 6) "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). But, when a noncitizen has not been lawfully admitted to the United States, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law" because such noncitizens have "only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140. This is the result of "the so-called 'entry fiction' theory of immigration law," under which "[a]liens who have not 'entered the United States within the meaning of the law,' i.e., who were never lawfully admitted and do not have leave to remain, are 'still in theory of law at the boundary line,'" *Gonzalez v. Ladwig*, No. 2:26-cv-02017-MSN-atc, 2026 WL 413602, at *11 (W.D. Tenn. 2026) (Norris, J.) (quoting *Kaplan v. Tod*, 267 U.S. 228, 230–31 (1925)), where they have only those rights provided by Congress. *See*

6

*Thuraissigiam*, 591 U.S. at 140. And, here, Congress did not provide a right to a bond hearing. 8 U.S.C. § 1225(b)(2)(A). As a result, Petitioners' due process claim fails.

**B.** Petitioner's remaining constitutional claims likewise fail. *First*, Petitioner cites no authority—and the Court is aware of no authority—establishing that the Fourth Amendment prevents the government from detaining an alien in compliance with the law. The Court will not impose that extreme rule in the absence of authority compelling it. And, in any event, if there is a constitutional line concerning the length of time a noncitizen can be detained pending removal proceedings, Petitioner has not attempted to establish where that line falls, much less that his two-and-a-half month detention falls on the unconstitutional side of that line. In fact, one of Petitioner's authorities, *Demore v. Kim*, 538 U.S. 510, 528 (2003), rejected a noncitizen's argument about a six month detention pending removal. *Id.* at 528.

*Second*, Petitioner briefly adverts to a challenge to the conditions of confinement, he alleges no facts supporting that claim—much less showing that the alleged deficiencies rise to the level of a constitutional violation—and omits it entirely from his brief. (Doc. 1 at 7; Doc. 1-3) And even if he had, he still would not be entitled to release: Petitioner does not allege that these conditions "can be remedied only by release" so that his condition of confinement claim is cognizable only in habeas, and in any event "[a] district court reviewing a claim under Section 2241 does not have authority to circumvent the established procedures governing the various forms of release enacted by Congress"—which here are nonexistent because, as explained above, detention is mandatory. *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020). Whatever Petitioner might be able to do with this sort of claim in another vehicle, it is not a basis for relief under Section 2241.

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

The Clerk is **DIRECTED TO CLOSE THIS CASE**.

**IT IS SO ORDERED**, this 1st day of April, 2026.


       s/ *Brian C. Lea*
       BRIAN C. LEA
       UNITED STATES DISTRICT JUDGE